IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| KIMBERLY RISINGER | § | |
| v. | § | CIVIL ACTION NO. 6:12CV885 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

**MEMORANDUM OPINION AND ORDER**

On November 19, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. Pursuant to 28 U.S.C. § 636(c), and the consent of both parties, the case was assigned to the undersigned for disposition.

**I.     HISTORY**

On July 16, 2009, Plaintiff filed for disability insurance benefits under Title II of the Social Security Act (the Act), and shortly thereafter, on July 29, 2009, filed for supplemental security income under Title XVI of the Act. *See* Transcript ("Tr.") at 111 (Administrative Law Judge (ALJ) decision). In her applications, Plaintiff alleged disability beginning October 31, 2008. *Id*. Plaintiff's claims were initially denied on February 11, 2010, and upon reconsideration on April 20, 2010. *Id*. Plaintiff's request for an administrative hearing was granted, and the hearing was held on September 7, 2010, in Dallas, Texas, before Administrative Law Judge Arthur Shultz. *See* Tr. at 124-57. Plaintiff appeared with representation and testified as to her medical issues and impairments. *Id.* Vocational expert, Joyce Shoop, also appeared and testified and medical expert, Dr. Alec Steele, testified via telephone. *Id.*

The ALJ issued an unfavorable decision on October 4, 2010. Plaintiff sought review. On March 13, 2012, the Appeals Council denied review. *See* Tr. at 1. On March 29, 2012, Ken Popkess,

Plaintiff's attorney, requested reopening of the denial of review because he did not receive a copy of the audio recording for review. Further, Plaintiff submitted additional medical records to the Appeals Council. *See* Tr. at 90. On October 2, 2012, the Appeals Council denied Plaintiff's request to reopen the denial of review based on receipt of new evidence. *See* Tr. at 1-2. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 147 L. Ed. 2d 80 (2000). Plaintiff then filed the instant action for review by this Court.

**II.     STANDARD**

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. See *Davis v. Heckler*, 759 F.2d 432, 435, n.1 (5th Cir. 1985); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980). Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam); *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (per curiam). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 434; *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295

(5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992); *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); SSR 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir.2003); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d at 1302, n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Court, however, must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(I)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

3

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; *see Bowling*, 36 F.3d at 435; *Harrel*, 862 F.2d at 475. Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.

Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. § 416.920(a). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id.* The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

To obtain Title II disability benefits, Plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912 (1982).

## III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in the October 4, 2010 decision:

The claimant meets the insured status requirement of the Social Security Act through December 31, 2013.

The claimant has not engaged in substantial gainful activity since October 31, 2008, the alleged onset date (20 C.F.R. § 404.1571 *et seq*., and 416.971 *et seq.*).

The claimant has the following severe impairments: rheumatoid arthritis, lupus, early connective tissue disease, obesity, and depression (20 C.F.R. § 404.1520(c) and 416.920[c]).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

The claimant has the residual functional capacity (RFC) to lift up to ten pounds occasionally, less than ten pounds frequently, stand and walk for 2 hours in an 8 hour workday, sit 6 hours of an 8-hour workday as defined in 20 CFR 404.1567(a) and 416.967(a), narrowed by the need for no climbing ladders and ropes, occasional balancing, stooping, kneeling, crouching or crawling due to obesity. She retains the ability to understand, remember, and follow simple and detailed instructions and complete repetitive simple tasks. The RFC is based on the evidence of record and testimony at the hearing.

The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565 and 416.965).

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exit in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969[a]).

The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2008, through the date of this decision (20 C.F.R. § 404.1520(g) and 416.920[g]). *See* Tr. at 118.

The ALJ determined that Plaintiff was not disabled under section 1614 (a)(3)A) of the Social Security Act. *See* Tr. At 118.

## IV. DISCUSSION AND ANALYSIS

Born in 1970, Plaintiff was 39 years old, which is defined as younger individual under the regulations, at the time of the ALJ's decision. *See* Tr. 108-23, 226; *see* also 20 C.F.R. § 404.1563(c).

5

She has an eighth grade education, and past relevant work experience as daycare attendant, retail sales in a clothing store, and as a clerk for a company contracting to provide emergency disaster relief. *See* Tr. 18, 152-53. Plaintiff alleges an inability to work since June 12, 2009 due to lupus, vasculitis, inflammation of blood vessels, depression, borderline diabetes, and severe body pain from lupus. *See* Tr. at 219, 226, 245.

Plaintiff presents several specific issues for review: 1) whether evidence submitted for the first time to the Appeals Council diluted the record such that substantial evidence no longer supports the ALJ's decision; 2) whether the ALJ properly assessed Plaintiff's residual functional capacity (RFC); and 3) whether the ALJ properly assessed Plaintiff's credibility. *See* Plaintiff's Brief at 1.

### A. The Medical Evidence

At the time of her applications, Plaintiff was thirty-eight years old, which the Act defines as a "younger individual". 20 C.F.R. §§ 404.1563 and 416.963. Medical records relevant to Plaintiff's claim show that she suffered from rheumatoid arthritis, lupus, connective tissue disease, insomnia, obesity, and depression. On September 3, 2009, Plaintiff underwent a psychological evaluation and mental status examination by psychologist Cactus McGirk, Ph.D. *See* Tr. at 330-34. Dr. McGirk diagnosed depressive disorder and assessed a GAF score of fifty-eight, indicating moderate symptoms. *See* Tr. at 334. Dr. McGirk opined that Plaintiff understood the meaning of filing for benefits and could manage benefits payments in her own interest. *See* Tr. at 330.

On September 23, 2009, Dr. Andrew Wade with Disability Determination Services physically examined Plaintiff to assess her Lupus with fatigue, pain, and swelling. *See* Tr. at 336-40. Plaintiff stated that she has pain everywhere and swelling in her hands, feet, and "all over her body" which causes her to be unable to work or function. *See* Tr. at 336. When her legs became swollen, she was unable to walk. *Id*. Plaintiff also stated that she experiences pain every day and is chronically fatigued. *Id*. She stated that she could not lift anything over ten pounds and could not carry things for any

6

distance because her hands swell. *Id*. If she was "hurting" she could not dress herself or clean herself in the mornings. *Id*.

Dr. Wade noted Plaintiff's headaches, abdominal bloating, muscle and joint aches and numbness in her hands and left arm. *See* Tr. at 337. The doctor also observed dark vasculitic change in Plaintiff's lower legs at her shins and calves. *Id*. Plaintiff was dull to pinprick in her left hand up to her elbow and the reflexes in her knees were slowed. *See* Tr. at 338. Dr. Wade also observed Plaintiff's abnormal ability to stand, need for help getting to her feet, and unsteady stance. *Id*. Plaintiff also had an abnormal gait due to a limp on her right side with walking. *See* Tr. at 339. She was unable to squat or hop and had mild low back pain when bending forward. *Id*. Dr. Wade assessed moderate functional limitations with moving, moderate to severe functional limitations with lifting and carrying, and overall balance, bending, and gait problems. *Id*

. From September 2009 through December 2009, Plaintiff was treated at Johnson Ross and Hurst Memorial Clinic due to insomnia, fatigue, and multiple rashes. *See* Tr. at 411-33. She was diagnosed with rheumatoid arthritis, mixed connective tissue disorder, and depression. *Id*. She was prescribed medication and referred to Dr. Pratap Tummala for evaluation. *Id*. On November 18, 2009, Dr. Tummala, evaluated Plaintiff's joint pain and connective tissue disease. *See* Tr. at 342. Dr. Tummala noted that Plaintiff experienced generalized pain, stiffness, and fatigue which worsened with activity. *Id*. After examination, Dr. Tummala concluded that Plaintiff had some of the antibodies consistent with Lupus, mild synovitis, and strong positive rheumatoid factor. *See* Tr. at 344. He opined that Plaintiff could have early rheumatoid arthritis. *Id*. After more examination Dr. Tummala concluded that Plaintiff had an overlap of rheumatoid arthritis and lupus. *See* Tr. at 345.

Dr. Tummala continued to treat Plaintiff's joint pain and connective tissue disease through 2010. *See* Tr. at 442, 445. Dr. Tummala noted that Plaintiff's joint pain had worsened and that she had been unable to work in any job due to the pain. *Id*. The doctor also noted that Plaintiff had intermittent

7

pain in both of her wrists and parethesias in her arms and legs. *Id*. Plaintiff continued to experience generalized pain, stiffness, and fatigue. *Id*. Dr. Tummala counted twenty-two tender joints but observed no swelling. *See* Tr. at 442-43. He continued his assessment of rheumatoid arthritis overlapping with lupus. *See* Tr. at 443, 445-47.

State agency consultant, Dr. Norvin Curtis, issued a psychiatric review technique which assessed Plaintiff from July 29, 2009, to February 4, 2010. *See* Tr. at 451-64. Dr. Curtis identified Plaintiff's depressive disorder, characterized by her sleep disturbance, decreased energy, and difficulty concentrating or thinking and as a medically determinable impairment. *See* Tr. at 454. The consultant opined that Plaintiff's mental impairments caused moderate difficulties in maintaining concentration, persistence, or pace. *See* Tr. at 461.

In a subsequent mental RFC based on Plaintiff's depressive disorder, Dr. Curtis opined that Plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Tr. at 465-66. The consultant concluded that Plaintiff could understand, remember, and carry out detailed but not complex instructions, make basic decision, concentrate for extended periods, interact with others, and respond to changes. *See* Tr. at 467.

On February 5, 2010, another non-examining state agency medical consultant issued a physical RFC based Plaintiff's connective tissue disease. *See* Tr. at 469-76. The consultant opined that Plaintiff could lift and/or carry ten pounds frequently, stand and/or walk at least two hours in an eight-hour workday with normal breaks, and sit about six hours in an eight-hour workday. *See* Tr. at 470. The consultant opined that Plaintiff's impairment did not meet or equal a listing under SSA guidelines and that Plaintiff was capable of sustained work. *See* Tr. at 476.

Dr. Tummala continued to treat Plaintiff for rheumatoid arthritis through 2012. *See* Tr. at 73-82. On January 24, 2011, he issued a physician's statement based on Plaintiff's rheumatoid arthritis and diffuse connective tissue disease. *See* Tr. at 84. Dr. Tummala stated that Plaintiff's impairments were permanent. *Id*. He opined that Plaintiff could not lift/carry objects weighing more than two pounds for more than one hour per day. *Id*. She could not stand longer than five minutes and had to move every fifteen minutes while sitting. *Id*. Dr. Tummala also opined that Plaintiff could not kneel, squat, bend, or stoop, and could only occasionally push and pull. *Id*. Further, Plaintiff could only occasionally keyboard due to pain in her hands. *Id*.

*Hearing Testimony*

At the administrative hearing, the medical expert testified that Plaintiff's impairments would not meet or equal a listing and she would be capable of light and sedentary work. *See* Tr. at 128. The medical expert also testified that, because he did not actually examine Plaintiff, he did not have a complete basis for giving an assessment of what her functional capacity might be. *See* Tr. at 131.

Plaintiff testified that her hands swell and become painful. *See* Tr. at 135. She could not sit for more than an hour, before she experiences swelling in her legs and hands. *Id*. She described her pain as throbbing and ranging from five to eight out of ten on a daily basis. *See* Tr. at 136. Plaintiff stated that the pain in her hands affects her ability to grasp objects and lift things. *See* Tr. at 139-40. When her hands swell, Plaintiff is unable to bend them to grasp things. *See* Tr. at 140. Plaintiff testified that she can lift a gallon of milk when her hands are not swollen, watches television, and she sometimes tries to help her grandparents cook. *See* Tr. at 140. Plaintiff is bedridden on "bad days"; however, she also possesses a valid driver's license and drives once a week. *See* Tr. at 142. She also uses a computer for short periods of time. *See* Tr. at 146.

Plaintiff further testified that she has good and bad days with bad days occurring three to four times a week. *See* Tr. at 141. On bad days, Plaintiff could not get out of bed, bathe, dress, or groom

9

herself, nor was she able to go to work. *See* Tr. t 142-43. Plaintiff also testified that she could not afford to go to the doctor and could barely afford to pay rent. *See* Tr. at 148, 149.

The vocational expert (VE") testified that were Plaintiff only able to use her "hands and arms only occasionally for both gross and fine manipulation, basically bilateral manual dexterity," that this would preclude Plaintiff from performing other work as a assembler of optical goods, sewing machine operator, and telemarketer quotation provider. *See* Tr. 155; Pl.'s Br. at 14.

### B. ALJ's Step Four Analysis

"To determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5$^{th}$Cir. 1990). Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing her past relevant work.20 C.F.R. §§ 416.920(b)-(f). The ALJ found that Plaintiff had the RFC to lift up to ten pounds occasionally and less than ten pounds frequently, stand and walk for two hours in an eight-hour workday, and sit six hours in an eight-hour workday, narrowed by the restriction against climbing ladders or ropes and limited to occasional balancing, stooping, kneeling, crouching or crawling due to obesity. *See* Tr. at 114-15. The ALJ further held that Plaintiff retained the ability to understand, remember, and follow simple and detailed instructions and complete repetitive simple tasks. *See* Tr. at 115. The ALJ ultimately determined that the objective medical evidence did not substantiate Plaintiff's allegations of total and permanent disability. *See* Tr. at 118.

The ALJ found that Plaintiff's severe impairments include rheumatoid arthritis, lupus, early connective tissue disease. *See* Tr. at 113. The ALJ did not, however, address the medical record evidence of Plaintiff's issues with her hands and her manipulative limitations in assessing Plaintiff's RFC.

In *Hunter v. Commissioner*, 2012 WL 4741231 (N.D.Tex., September 6, 2012), the District Court observed that "the ALJ failed to mention Plaintiff's medical impairment of lumbar disc disease. He failed to consider this impairment at Step Two and assess its severity." The District Court noted that considerable medical evidence supported the existence of this disease, along with testimony of the difficulties which it caused to the plaintiff. The District Court explained as follows:

> When an ALJ determines a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. §§404.1545(a)(2), 404.1545(e), 416.945(a)(2), 416.945(e). A medically determinable impairment is one that is 'demonstrated by medically acceptable clinical and laboratory diagnostic techniques.' *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994); *quoting* 42 U.S.C. §423(d)(3).

The District Court in that case observed that a treating physician's opinion on the nature and severity of an impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence, citing *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). In addition, the ALJ must consider the entire record and cannot pick and choose only the evidence which supports his position. *Loza v. Apfel*, 219 F.3d 378, 393, 399 (5th Cir. 2000).

Although the Commissioner in *Hunter* argued that the medical sources consisted only of conclusions, the District Court rejected this contention, stating that the reports were not simply conclusory opinions that the claimant was disabled, but instead consisted of medical records including diagnoses, progress reports, and treatment plans. The District Court cited other records of diagnoses from treating physicians including osteoarthritis, fibromyalgia, lumbar degenerative disc disease, ptosis, and Sjogren's syndrome, and concluded that "the ALJ's failure to discuss these medical opinions and to give good reasons for the decision to omit assigning any weight to them is contrary to Social Security Rulings 96-2p and 96-5p and 20 C.F.R. §404.1527(d). The ALJ erred in evaluating the medical

11

evidence and his RFC determination is not supported by substantial evidence." *Id*.; *see* also *Reed v. Colvin*, 2013 WL 5314438 (N.D.Tex., September 23, 2013) (District Court held that "it is simply not clear from the record before the court whether the ALJ considered Plaintiff's actual diagnoses of borderline intellectual functioning and cognitive disorder in establishing Plaintiff's RFC; the court is not in a position to speculate that the error is harmless and that the result of the administrative proceeding would have been the same," and remanded the case).

### C. Application of Law to the Present Case

Regulations define a severe impairment as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). As the ALJ correctly stated, the Fifth Circuit has held that an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *See* Tr. at 12; *see* also *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Therefore, when an ALJ has determined that an impairment is severe at Step Two, as is the situation with Plaintiff's case, he has found that the impairment limits the claimant's ability to work.

In this case, the ALJ found Plaintiff's connective tissue disease, lupus, and rheumatoid arthritis to be a severe impairment at Step Two but did not include any manipulative limitations in his RFC assessment despite the evidence that her diseases caused those limitations. *See* Tr. at 113-15. The RFC is the most a claimant can do in a work setting despite any limitations that claimant may have. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC, the ALJ must consider all medically determinable impairments of which he is aware, including those that are not "severe". 20 C.F.R. § 416.945(a)(2); *see also* 20 C.F.R. §§ 416.920(c)), 416.921, and 416.923. The ALJ must make clear

factual findings on this issue for his decision to stand. *See Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988).

The ALJ's failure to include Plaintiff's limitations in his RFC prejudiced Plaintiff's claim because the unsupported RFC did not reflect Plaintiff's actual capability. Upon examination, Dr. Wade noted Plaintiff's muscle and joint aches and numbness in her hands and left arm. *See* Tr. at 337. Plaintiff stated that she has pain everywhere and swelling in her hands, feet, and "all over her body" which causes her to be unable to work or function. *See* Tr. at 336. Plaintiff stated that she could not carry things for any distance because her hands swell. *See id*. If she was "hurting" she could not dress herself or clean herself in the mornings. *Id*. Dr. Wade observed that Plaintiff was dull to pinprick in her left hand up to her elbow. *See* Tr. at 338. Dr. Tummala, evaluated Plaintiff's joint pain and connective tissue disease. *See* Tr. at 342.

Dr. Tummala noted that Plaintiff experienced generalized pain, stiffness, and fatigue which worsened with activity. *Id*. He noted that Plaintiff's joint pain had worsened and that she had been unable to work in any job due to the pain. *See* Tr. at 442, 445. The doctor also noted that Plaintiff had intermittent pain in both of her wrists and parethesias in her arms and legs. *Id*. Plaintiff continued to experience generalized pain, stiffness, and fatigue. *Id*. Dr. Tummala counted twenty-two tender joints. *See* Tr. at 442-43.

Plaintiff testified that her hands swell and become painful. *See* Tr. at 135. She described her pain as throbbing and ranges from five to eight out of ten on a daily basis. *See* Tr. at 136. Plaintiff also stated that the pain in her hands affects her ability to grasp objects and lift things and she is unable to bend her hands when they swell. *See* Tr. at 139-40. Based on Plaintiff's rheumatoid arthritis and diffuse connective tissue disease. Dr. Tummala opined that Plaintiff could not lift/carry objects weighing more

13

than two pounds for more than one hour per day. *See* Tr. at 84. She could only occasionally keyboard due to pain in her hands. *Id*.

Despite this evidence showing the hand and arm limitations Plaintiff experienced, the ALJ did not include any manipulative limitations in his RFC assessment. *See* Tr. at 114-15. Further, the ALJ failed to explain why such limitations were excluded from his RFC assessment. In all cases in which pain or other symptoms are alleged, the administrative decision must contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's own observations. *Turney v. Astrue*, 2009 WL 980323 *6 (N.D. Tex. Apr. 9, 2009); *see* also Social Security Ruling 95-5p.

The ALJ's failure to include all of Plaintiff's limitations in his RFC prejudiced Plaintiff's claim because the unsupported RFC did not reflect Plaintiff's actual capability. Plaintiff alleged limitations in her ability to use her hands. *See* Tr. at 135, 136, 139–40. Treatment records also support manipulative limitations. *See* Tr. at 84, 336–38, 442, 445. The ALJ found Plaintiff's connective tissue disease to be a severe impairment at Step Two but did not include any manipulative limitations in his RFC assessment despite the evidence that her disease caused those limitations. *See* Tr. at 113-15.

The Commissioner responds that the ALJ's RFC findings regarding Plaintiff's ability to use her hands were supported by substantial evidence. *See* Def. Br. at 10–12. In support, Commissioner first cites the opinions of the nonexamining consultant who found that Plaintiff had no manipulative limitations. *See* Def. Br. at 11. This nonexamining opinion, however, is directly contradicted by Dr. Tummala's opinion. *See* Tr. at 84. This nonexamining opinion also contradicts other evidence from treating and examining sources. *See* Pl. Br. at 12–14. The ALJ may rely on a nonexamining opinion *only* where it does not contradict the examining physician. *Villa v. Sullivan*, 895 F.2d 1021, 1024 (5th

Cir. 1990); *see also Barbee v. Barnhart*, 54 Fed. Appx. 406 (5th Cir. 2002) (An ALJ cannot rely on non-examining opinion over that of a treating specialist).

The Commissioner also noted several records that indicate that Plaintiff had normal grip strength in her hands as support for the ALJ's findings. *See* Def. Br. at 11–12. The Commissioner fails to explain, however, how normal grip strength is determinative of the ability to use her hands constantly, when evidence shows that she also experienced pain, paresthesias, an inability to lift and carry objects weighing more than two pounds, and an inability to use a keyboard more than occasionally. *See* Tr. at 84, 442, 445.

Plaintiff's allegation that her ability to use her hands was impaired was supported by the evidence in the record from her treating physicians. Conversely, the ALJ's finding that Plaintiff was unlimited in the use of her hands was not supported by substantial evidence. Therefore, the ALJ's unsupported RFC finding did not reflect Plaintiff's actual capability. The claimant's RFC is considered twice in the Five-Step sequential analysis of a disability claim. *Newton*, 209 F.3d at 453. At the Fourth Step, it is used to determine whether the claimant can still perform her past relevant work. *Id.* At the Fifth Step, it is used to determine if the claimant can perform any other work in the national economy. *Id*.

At Step Five, the ALJ determined that Plaintiff could perform the jobs of assembler of goods, sewing machine operator, and telemarketer quotation provider. *See* Tr. at 117. At the administrative hearing, however, the VE testified that those jobs would be eliminated if claimant's ability to use her hands was limited. *See* Tr. at 155. If the ALJ had included all of Plaintiff's limitations in his RFC assessment, there existed a reasonable possibility that the findings in his case could have been different. *Ripley*, 67 F.3d at 555 (remand is appropriate when evidence is evaluated under the correct legal

standards, and there is reasonable probability that the new evidence or evaluation would change the outcome of the decision.).

The ALJ based his findings at Step Four and Five on his RFC assessment. Because the disability determination is based in large part on the RFC finding, an improper RFC could have led to an improper disability determination. *Mahoney v. Astrue*, 3:09-CV-810-L, 2009 WL 3097334, at *9 (N.D. Tex. Sept. 25, 2009). Had the ALJ included all of Plaintiff's limitations in his RFC assessment, there existed a reasonable possibility that the findings in his case could have been different, therefore remand is appropriate for further consideration of Plaintiff's RFC. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (remand is appropriate when evidence is evaluated under the correct legal standards, and there is reasonable probability that the new evidence or evaluation would change the outcome of the decision.).

Given the medical records and Plaintiff's testimony about her pain and limitations with her hands, the RFC finding by the ALJ with no limitations on manipulations is error. Because there is no indication that the ALJ properly considered Plaintiff's pain and limitations associated with her well-documented medical conditions in determining Plaintiff's RFC, the ALJ's decision is not supported by substantial evidence. Therefore, the Court must reverse the decision of the ALJ denying benefits. *See Carey v. Apfel*, 230 F.3d 131, 143 (5th Cir. 2000). This error requires a remand; as a result, the remainder of the Plaintiff's claims need not be addressed.

## V. CONCLUSION

It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions for further consideration consistent with the findings above.

**So ORDERED and SIGNED this 25th day of September, 2014.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE